UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAUL HOLJES, : | |
| : | |
| *Plaintiff,* : | |
| : | |
| v. : | No. 3:21-cv-1277 (VDO) |
| : | |
| LINCOLN NATIONAL LIFE : | |
| INSURANCE CO., : | |
| : | |
| *Defendant.* : | |

### RULING ON MOTION TO COMPEL

Plaintiff, a financial advisor, brings this action seeking long term disability benefits under an insurance policy sold by defendant. The Fourth Amended Complaint (ECF 87) alleges as follows. Plaintiff suffered a traumatic brain injury in a July 2016 motor vehicle accident that has left him totally and permanently disabled. ¶¶ 16-17. As a result of the accident and the resulting injury, plaintiff experiences "chronic headaches and dizziness, extreme fatigue, impaired concentration and speech, visual impairments, disorientation and memory loss." ¶ 17. Plaintiff also allegedly suffers from various "emotional impairments." ¶ 17. Prior to the injury, plaintiff's job duties as a financial advisor included "managing clients' investment portfolios, identifying clients' long and short-term financial goals, formulating and implementing tax strategies, educating clients about investments, networking with and soliciting clients, researching economic data and market trends, and retirement planning for his clients." ¶ 7. However, after the injury, he "was unable to perform his occupation [as a financial advisor]. His client accounts had been prepared prior to the accident and he kept their investments on autopilot, delegating day-today operations to his assistant. He completely lost his ability to solicit new clients after the accident." ¶ 19. Although defendant initially approved plaintiff's claim for Total Disability

benefits, defendant downgraded his claim to Partial Disability in April 2018 when it learned that he had moved his clientele from one broker-dealer (LPL Financial) to another (Kestra) and then "terminated [his] disability claim entirely on the grounds that his income from Kestra indicated that he was fully able to work as a financial advisor."  ¶¶ 18, 21-23.  Plaintiff's central contention is that he is totally disabled, which in the language of the insurance policy "means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation."  ECF 87 at 45.

Defendant now asks the Court to enforce requests for production ("RFPs") contained in its First and Second Set of Requests for Production seeking identification of plaintiff's clients for the past ten years (First Set, RFP 55) as well as his personal trading activity and trading activity/communications with clients since January 2015 (Second Set, RFPs 1-6) and allocation of work duties in his office (Second Set, RFP 7).  *See* First Set, ECF 107-2; Second Set, ECF 107-3.  Defendant argues that the information is relevant to whether plaintiff is unable to perform the main duties of his occupation.  Plaintiff objects that (a) the requests are out of bounds in a disability insurance claim investigation, (b) confidentiality rules applicable to financial advisors bar this discovery, (c) nonparty privacy interests bar the discovery, (d) the information is irrelevant, (e) the requests are overly broad and unduly burdensome, and (f) the requests are improperly motivated to pressure him to drop the case.

For the following reasons, plaintiff's objections are OVERRULED except insofar as this ruling narrows the breadth of the RFPs as described below.

### A. Legal standard

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"

Relevance under Rule 26 is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978), cited in *Cornelius v. Luna*, No. 3:20-cv-1047 (JCH)(RMS), 2023 WL 3071414, at *1 (D. Conn. Apr. 25, 2023). Even if information is relevant, discovery may be denied if the burdens of producing it are disproportionate to the needs of the case. *See Conservation Law Foundation, Inc. v. All-Star Transportation, LLC*, No. 3:21-cv-201 (JBA)(TOF), 2022 WL 16901999, at *2 (D. Conn. Nov. 11, 2022) (Farrish, M.J.). In evaluating proportionality, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Although "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery dispute," it is the requesting party's burden to demonstrate relevance and the responding party's burden to demonstrate undue burden or expense. *See* Rule 26(b)(1) advisory committee's note to 2015 amendment; *see also Conservation Law Foundation*, at *2.

    **B. Analysis**

        **1. No discovery rules unique to disability insurance claims**

During oral argument, plaintiff asserted that there are limits to the information an insurance company may properly request when investigating a claim of long term disability. In particular, plaintiff argued that it is inappropriate for a disability insurer to request information from a financial advisor concerning client identities and the work performed for them and that it is not customary for disability insurers to request such information in investigating claims.

However, despite the Court's invitation to supply case law to support the proposition that there are unique discovery rules applicable to disability insurance litigation, *see* ECF 113, the plaintiff was unable to provide any such authority and the Court's own research did not unearth any. Consequently, the Court will apply the same relevance and proportionality standards applicable in every other case.

### 2. Confidentiality rules do not bar this discovery

Plaintiff's next objection attempts to assert a categorical financial advisor privilege, arguing that he is not permitted to disclose client information under SEC and FINRA rules. He cites 17 CFR § 248.30, which is part of the SEC's Regulation S-P addressing privacy of consumer financial information and safeguarding personal information. However, "it is well established that courts are to avoid construing confidentiality provisions in statutes as barring disclosure for discovery purposes unless the statute clearly and unambiguously requires such suppression." *Chaplaincy of Full Gospel Churches v. England*, 234 F.R.D. 7, 11 (D.D.C. 2006) (citing *Baldrige v. Shapiro*, 455 U.S. 345, 360 (1982) ("A statute granting a privilege is to be strictly construed so as to avoid a construction that would suppress otherwise competent evidence.") (cleaned up)); *accord In re Nassau Cnty. Strip Search Cases*, No. 99-cv-2844 (DRH), 2017 WL 3189870, at *5 (E.D.N.Y. July 26, 2017). Here, Regulation S-P and its related statute do *not* purport to shield information from ordinary discovery – in fact, they expressly permit disclosure to respond to judicial process. *See* 17 C.F.R. § 248.15(a)(7) (permitting financial institution[1] to disclose nonpublic personal information "to respond to judicial process"); 15 U.S.C. § 6802(e)(8) (same). Plaintiff also cites FINRA Rule 2010 for the proposition that he

---

[1] Regulation S-P defines "financial institution" to include brokers, dealers, investment companies, and investment advisers that are registered with the SEC. *See* 17 C.F.R. § 248.1(b).

has an ethical duty of confidentiality that prevents disclosure of clients' financial information, but that rule only generally provides that members must "observe high standards of commercial honor and just and equitable principles of trade." Rule 2010 does not clearly and unambiguously bar disclosure pursuant to judicial process, and plaintiff does not cite to any authority supporting any such interpretation. Consequently, these rules do not preclude plaintiff from disclosing client information pursuant to the discovery rules. *See*, *e.g.*, *Vento v. Handler*, No. 12-mc-288, 2012 WL 12857454, at *2 (S.D.N.Y. Sept. 17, 2012) (enforcing subpoena on nonparty investment advisor for documents concerning financial advice provided to plaintiff on transactions at issue).

### 3. Nonparty privacy interests do not bar this discovery

Nor do the privacy interests of nonparties in their financial information categorically preclude its disclosure. Of course, "[t]he right of privacy and the right to keep confidential one's financial affairs is well recognized," *Hecht v. Pro-Football, Inc.*, 46 F.R.D. 605, 607 (D.D.C. 1969), and "[d]iscovery has not been allowed when the information would *unnecessarily* invade the private records of non-litigants." *Ne. Women's Ctr., Inc. v. McMonagle*, No. 85-cv-4845, 1987 WL 6665, at *4 (E.D. Pa. Feb. 10, 1987) (emphasis added); *see*, *e.g.*, *Fung-Schwartz v. Cerner Corp.*, No. 17-cv-233 (VSB)(BCM), 2020 WL 4927485, at *9 (S.D.N.Y. Aug. 21, 2020) (denying discovery of customer identities and their business arrangements where relevance was dubious); *see also Reed v. Smith, Barney & Co.*, 50 F.R.D. 128, 130 (S.D.N.Y. 1970) (finding insufficient showing of need "at this time" to justify exploration into private stock transactions by nonparties). However, "[i]t is undisputed that financial records of a non-party witness are not privileged," *Application of Sumar*, 123 F.R.D. 467, 473 (S.D.N.Y. 1988), and the privacy interests of nonparties must be balanced against the interests of justice. *Hecht*, at 607.

Accordingly, the private information of nonparties is discoverable when it is relevant and proportional to the needs of the case. For example, this Court has held that the accountant-client privilege recognized in Conn. Gen. Stat. § 20-381j "creates an expectation of confidentiality but such 'expectation is not a privilege and may be overcome on a showing of need.'" [2] *Sberbank of Russia v. Traisman*, No. 3:14-cv-216 (WWE), 2016 WL 4479533, at *3 (D. Conn. Aug. 23, 2016) (quoting *Sav. Bank of Manchester v. Daly*, No. CV020813164S, 2002 WL 1820682, at *1 (Conn. Super. Ct. June 12, 2002)). Similarly, this Court routinely grants discovery of personnel information of alleged nonparty comparators in employment discrimination cases, despite the privacy interest recognized in Conn. Gen. Stat 31-128f. *See Gibbs v. Am. Sch. for the Deaf*, No. 3:05-cv-563 (MRK), 2007 WL 1079992, at *1 (D. Conn. Apr. 4, 2007) ("Judges in this District have repeatedly recognized that[,] when personnel information . . . is necessary and relevant to a case, a court may order limited disclosure of that information consistent with the dictates of § 31-128f."). In such cases the Standing Protective Order and the confidentiality designations available pursuant to that Order are typically deemed sufficient protection for the privacy interests of nonparties. *See Berney v. Apple Inc.*, No. 3:20-cv-1379 (JAM), 2021 WL 6334985, at *4 (D. Conn. May 27, 2021).

In short, the discovery requests in this case are not subject to any extraordinary rules simply because the plaintiff acts as a financial advisor. Instead, the Court must decide the ordinary questions of whether the information sought is relevant and whether defendant's need

---

[2] Although state privilege law does not govern in a federal question case, as compared to a diversity case, state privacy rules may be considered in any federal case when determining whether discovery is appropriate. "Federal courts should not . . . ignore state privacy rules in federal proceedings. . . . Instead, a federal court should balance a plaintiff's interest in disclosure against the state's legitimate concern of the protecting the confidentiality of the requested information." *Cyris Jewels v. Casner*, No. 12-cv-1895 (KAM), 2016 WL 2962203, at *6 (E.D.N.Y. May 20, 2016) (citations and quotation marks omitted).

for the information outweighs the privacy interests of plaintiff's clients and any discovery burdens on plaintiff himself that he has substantiated.

### 4. Relevance

As noted above, relevance is broadly construed under Rule 26 "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Here, the requested information is highly relevant. Plaintiff's fundamental allegation is, in the words of the insurance policy, that he "is unable to perform each of the Main Duties of his . . . Own Occupation." ECF 87 at 45. He alleges that prior to his July 2016 injury those duties included, among other things,

- managing clients' investment portfolios,
- identifying clients' long and short-term financial goals,
- formulating and implementing tax strategies,
- educating clients about investments,
- networking with and soliciting clients,
- researching economic data and market trends, and
- retirement planning for his clients.

*Id.* ¶ 7. He admits that since the injury he has maintained a clientele as a sole proprietor in affiliation with two broker-dealers (LPL, followed by Kestra) but alleges, nonetheless, that he is "unable to perform his occupation" and explains that he merely "kept [his clients'] investments on autopilot" and has "delegat[ed] day-to-day operations to his assistant. *Id.* ¶¶ 19, 21. In the Court's view, it cannot be reasonably disputed that the documentation sought in the RFPs – including trading activity, asset re-allocation or rebalancing, investment trade instructions, changes of investment strategy, trade confirmations, investment or performance reviews, communications with clients relating to these subjects, and delegation of duties to his employees – is highly relevant to the issue of whether plaintiff is disabled within the meaning of the

insurance policy. The requested discovery is tailored to plaintiff's own allegation as to the primary duties of his occupation as a financial advisor, the critical starting point for a claim of total disability under the insurance policy at issue in this action. Indeed, exploration of whether plaintiff has substantively communicated and engaged with his clients over the past several years in retirement planning, managing their investment portfolios, identifying their financial goals, implementation of tax strategies and educating them about their investments is critical to defendant's ability to test the credibility of plaintiff's assertions that he is unable to perform these duties and that his clients' investments are merely on "autopilot." Discovery of client information may very well lead to the development of evidence that squarely addresses and impeaches these assertions. In short, the information sought by defendant unquestionably bears on defendant's theory that plaintiff's alleged inability to perform the main duties of his occupation as a financial advisor is inconsistent with his interrogatory answer indicating that he averaged more than $40 million in client assets under management between 2019 and 2022. *See* ECF 107-1 at 10.

### 5. Proportionality

When evaluating whether discovery is proportional to the needs of the case, Rule 26 instructs the court to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). It is the responding party's burden to demonstrate undue burden or expense, usually by affidavit or other evidence, although the Court may overlook the lack of such evidence when the requests are overly broad or unduly burdensome on their face. *Conservation Law Foundation*, 2022 WL 16901999, at *2.

Here, plaintiff argues that the burdens of gathering information are uniquely elevated due to his diagnosis of traumatic brain injury, and he asserts that defendant can adequately investigate his ability to work by deposing him and his employees.  Defendant argues in response that there is potential for bias in the testimony of plaintiff and his employees and that defendant should have access to documentation that could shed an objective light on the subject.  Defendant further argues that it cannot be especially difficult for plaintiff to gather client account records – such as trading activity – which he is already required to keep pursuant to financial industry regulations.

The Court finds defendant's arguments more persuasive, particularly given that plaintiff has not submitted an affidavit or other evidence, beyond the conclusory assertions of his counsel, concerning the time and expense that he spent responding to prior discovery in this matter, the extent to which the requested client information is already organized and available him, and the time and expense that he reasonably anticipates spending in responding to the additional RFPs.  *See*, *e.g.*, *Wang v. Delphin-Rittmon*, No. 3:17-cv-586 (JAM), 2023 WL 7384389, at *5 (D. Conn. Nov. 8, 2023) (Garcia, M.J.) (overruling burden objection where plaintiff did not submit any affidavit or evidence to substantiate it).  Not only did plaintiff fail to satisfy his burden to demonstrate undue burden, but he also declined the Court's invitation to propose narrower parameters that would reduce the burden while still allowing defendant to reasonably investigate the scope and degree of plaintiff's actual labors on behalf of clients.  The information sought may well be the most objective evidence of whether plaintiff is unable to perform the main duties of his occupation, which is of crucial importance to the question of liability.  Consequently, plaintiff's unsupported and blanket objection of undue burden is overruled.  Nonetheless, the Court agrees that the requests are broader than necessary to enable defendant to investigate this

question and will therefore limit the requests as described in the Order below to a small subset of the 94 clients plaintiff currently has and to a more limited time period than originally sought to limit the compliance burden and the privacy intrusion on nonparties.[3]

### 6. Insufficient allegation of improper motive

Plaintiff's final objection is that if he identifies his clients, defendant will seek to disrupt those business relationships as pressure to drop the case. While the allegation of improper motive is wholly speculative at present,[4] there is good reason to proceed cautiously to protect the financial privacy of plaintiff's nonparty clients and to avoid any unnecessary disruption of plaintiff's client relationships.

For example, in a case in which software developers claimed that the defendants had disrupted their business, the district court found that discovery of the plaintiffs' client list was necessary and relevant to develop the defenses and ordered disclosure subject to a confidentiality designation. *MIMICS, Inc. v. Vill. of Angel Fire*, No. 99-cv-839 (MV), 2005 WL 8164212, at *2 (D.N.M. Mar. 22, 2005). Nonetheless, the court precluded the defendants from contacting those clients because they "failed to demonstrate that contact with Plaintiffs' clients is necessary to develop their defenses much less that [their] need to contact Plaintiffs' clients outweighs the potential harm to Plaintiffs' business interests from such contact." *Id.* at *2-3. The court

---

[3] It appears undisputed that defendant paid long term disability benefits at least through early 2018. See ECF 87 ¶ 22 and ECF 89 ¶ 22. Accordingly, the Court will limit the time period for which it will order compliance to January 1, 2018 to December 31, 2023.

[4] Although plaintiff professes that his goal is to protect his clients from discovery burdens, it was apparent during oral argument that plaintiff has not advised his clients of the limitations he alleges in this action. Though the Court draws no conclusions, this does raise the question of whether plaintiff's more immediate goal is to prevent his clients from learning that he claims inability to perform the duties of a financial advisor and alleges that their investments are on "autopilot."

observed that the benefit of the client list was to "assist Defendant in verifying and corroborating Plaintiffs' records and testimony" and that the information the defendants proposed to seek from the clients was available from other sources. *Id.* at *3. Similarly, in a dispute between a group of models claiming that their photos had been used without permission in advertisements by so-called gentleman's clubs, the district court permitted discovery of the clubs' client lists so that the plaintiffs could investigate the actual impact of the advertisements but ordered the parties to negotiate limitations on contact in order to "protect Defendants' customers from undue harassment and to protect the goodwill of Defendants' business." *Edmondson v. RCI Hosp. Holdings, Inc.*, No. 16-cv-2242 (VEC), 2018 WL 2768643, at *1, *3 (S.D.N.Y. June 8, 2018).

In the present case, as discussed above, defendant has demonstrated a need for documentation of plaintiff's work with clients in order to develop its defense and to verify the related testimony of plaintiff and his employees. Defendant has agreed that it presently does not need actual client names so long as the documents are assigned some identifier so that defendant can differentiate between client accounts. *See*, *e.g.*, *Lora v. Bd. of Ed. of City of New York*, 74 F.R.D. 565, 579 (E.D.N.Y. 1977) (in suit concerning standards for educational placement of children with emotional disabilities, ordering production of 50 randomly selected diagnostic and referral files coded for identification and redacting all references to child's identity). Consequently, the Court currently sustains plaintiff's objection to identifying its clients by name without prejudice to defendant renewing the request in the event that it believes it can establish a need for the information that outweighs the privacy interests and other burdens on the nonparty clients and the potential harm to plaintiff's business relationships.

### C. Conclusion

For all the foregoing reasons, plaintiff's objections to disclosure of client identities and to overbreadth and proportionality are sustained in part and overruled in part, and the other objections are overruled.

In the First Set, RFP 55 is denied without prejudice.

In the Second Set, as to RFPs 1, 2, 5 and 6, plaintiff's compliance shall be limited to the following subset of his clients and to the period January 1, 2018 to December 31, 2023: (a) the two group retirement plans referenced in answer to Interrogatory 9, *see* ECF 107-1 at 10; (b) the two clients "he lost at LPL" who "came back to him at Kestra" as referenced in answer to Interrogatory 9, *see* ECF 107-1 at 10; (c) the 5 clients identified in answer to Interrogatory 10 as JW, NM, DJ, SO and LH; and (d) the 5 clients whose total portfolios (i.e., the aggregate value of all accounts belonging to that client) managed by plaintiff and/or Peak Mountain have the greatest value as of December 31, 2023, excluding clients who fall into categories (a) through (c) above. For this subset of his clients, plaintiff shall produce documents setting forth all trading activity in the clients' accounts; all annual account statements; and all communications and correspondence between these clients and Holjes, Peak Mountain and their employees, including by email, text message or other forms of electronic communication, relating to:

- Solicitation, initiation, development, maintenance and/or continuation of the client/financial advisor relationship;
- Investment strategy and recommendations;
- Retirement planning;
- Market conditions and/or economic trends;
- Tax planning strategies;
- Identification of financial goals; and
- Any quarterly and annual analyses/reports regarding these clients' portfolios.

RFP 7 is granted as to the same subset of clients and limited to the same time period as ordered with respect to RFPs 1, 2, 5 and 6.  Plaintiff shall organize and categorize client-related documents using an anonymous client identifier and shall redact references to identifying information in the documents. The documents shall be subject to appropriate confidentiality designations and the provisions of the Standing Protective Order at ECF 6.  Defendant shall not contact any of plaintiff's clients absent further order of the Court.  Plaintiff's objections to RFPs 1, 2, 5, 6 and 7 are otherwise sustained.

As to RFPs 3 and 4 (which pertain to plaintiff's personal accounts), plaintiff shall produce, for the period January 1, 2018 to December 31, 2023, his annual account statements, records of all trading activity in those accounts, and any trade instructions issued by plaintiff as well as corresponding trade confirmations.  Plaintiff's objections are otherwise sustained.  To the extent that any responsive information implicates private financial information or personnel information, plaintiff may make appropriate designations under the Standing Protective Order. *See* ECF 6.

Compliance with this Order is due by **April 15, 2024**.

This is not a recommended ruling.  This is an order regarding case management which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2.  As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made.

SO ORDERED, this 15th day of March, 2024, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge